IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ) | | |
| and FRANK SKINNER, ) | | |
| ) | | |
| Plaintiffs/Relators, ) | Case No. 4:12-cv-00045 | |
| ) | | |
| v. ) | **MEMORANDUM OPINION** | |
| ) | | |
| ARMET ARMORED VEHICLES, INC., ) | By: Hon. Jackson L. Kiser | |
| and WILLIAM R. WHYTE, ) | Senior United States District Judge | |
| ) | | |
| Defendants. ) | | |

On October 16, 2012, Plaintiff Frank Skinner ("Plaintiff") filed this action against Defendants Armet Armored Vehicles, Inc. ("Armet"), and William R. Whyte ("Whyte") (collectively "Defendants") pursuant to the *qui tam* provisions the False Claims Act, 31 U.S.C. § 3729 et seq. The United States elected not to intervene in the action. (See Notice of Election by U.S. to Decline Intervention, Aug. 14, 2013 [ECF No. 18].) Plaintiff served both Defendants with a summons and a copy of the Complaint on May 22, 2014, and Defendants moved to dismiss the Complaint. I granted that motion in part, and Defendants now move to dismiss Plaintiff's Amended Complaint [ECF No. 60]. For the reasons set forth below, that motion will be granted in part and denied in part.

I. **STANDARD OF REVIEW**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. In determining facial plausibility, I must accept all factual allegations in the complaint as true. Id. The Complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (internal quotation marks omitted). Therefore, the Complaint must "allege facts sufficient to state all the elements of [the] claim." Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003). Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

## II. DISCUSSION

The facts are adequately set forth in my opinion on Defendants' first Motion to Dismiss. (See Mem. Op. pgs. 2–6, Aug. 26, 2014 [ECF No. 58].)[1] Where new facts alleged in the Amended Complaint are relevant to the current Motion to Dismiss, they are set forth below. As before, the facts in the Amended Complaint are accepted as true for the purposes of this motion. See Iqbal, 556 U.S. at 678.

The federal False Claims Act ("FCA") imposes civil liability on any person who "knowingly presents, or causes to be presented [to the United States government], a false or fraudulent claim for payment or approval," or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a) (2014). As the Fourth Circuit explained in Harrison v. Westinghouse Savannah River Co., the term "false or fraudulent claim" includes those instances "when the contract or extension of

---

[1] Skinner v. Armet Armored Vehicles, Inc., Case No. 4:12-cv-00045, 2014 WL 4243670, at *1–3, 2014 U.S. Dist. LEXIS 118784, at *2–9 (W.D. Va. Aug. 26, 2014).

- 2 -

government benefit was obtained originally through false statements or fraudulent conduct." 176 F.3d 776, 787 (4th Cir. 1999). "That is, the fraud may have been in the inducement." U.S. ex rel. Wilson v. Kellogg, Brown & Root, Inc., 525 F.3d 370, 376 (4th Cir. 2008).

In order to prove a fraudulent inducement claim under the FCA, a plaintiff must demonstrate: (1) that "there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a 'claim')." Harrison, 176 F.3d at 788. In fraudulent inducement cases, FCA liability attaches to "each claim submitted to the government under a contract" that was obtained by fraud. Id. As the Supreme Court stated, the initial fraud "[does] not spend itself with the execution of the contract." U.S. ex rel. Marcus v. Hess, 317 U.S. 537, 543 (1943). Its "taint" enters into every subsequent transaction "which was the basic cause for payment of every dollar paid by the [government] . . . ." Id.

In the present case, Plaintiff has alleged the following:

- The Government, in its solicitation, set forth the required ballistic protection standards that would be applicable to the vehicles it wished to purchase (Am. Compl. ¶ 150 [ECF No. 60]);
- Whyte designed the Kestrel/Gurkha vehicles and was therefore aware of its ballistic protection capabilities (id. ¶ 151);
- Whyte "knew that the Kestrel/Gurkha vehicle did not meet the Solicitation's requirements" (id. ¶ 152);
- Defendants "represented to the U.S. Government that Armet's Kestrel/Gurkha armored gun truck would meet" the standards set forth in the solicitation (id. ¶ 150); and
- The Government awarded Defendants the contract (id. ¶¶ 300, 314).

Likewise, Plaintiff has alleged that:

- Defendants stated to the government that there "would not be any gaps in the Kestrel/Gurkha vehicle's opaque armor" (id. ¶ 214);
- Key components of the Kestrel/Gurkha vehicle's armor were based on Armet's Balkan MK5 Armored Personnel Carrier ("APC") (id. ¶ 152);
- The APC had an unarmored door handle that "created an approximately three by four inch gap in the vehicle's armor" (id. ¶ 167);

- Whyte was aware that the APC's door handle was unarmored (id. ¶¶ 167–169); and
- "Armet's Kestrel/Gurkha armored gun truck used the same unarmored door handle as the Balkan MK5." (Id. ¶ 172.)

Thus, Plaintiff has alleged a false statement or fraudulent course of conduct (Defendants misrepresented the ballistic capabilities of the Kestrel/Gurkha) made with the requisite scienter (Whyte was aware of the actual ballistic capabilities of the vehicles). The Government relied on Defendants representations when it decided to award the contract to Armet, and the Government paid out claims on the contract that was obtained through these false statements. These facts, which make up the allegations related to Counts 1–4, adequately state a "fraud in the inducement" theory of FCA liability. Under this theory, every invoice submitted on the contracts that were awarded as a result of the alleged fraud is actionable.

Counts 5–8 represent a similar, but separate, issue. These counts all concern a fraudulent inducement theory of FCA liability, but Plaintiff bases that liability on Whyte's ultimately false representations about Armet's ability to deliver the goods by the agreed-upon date. The best argument against these claims is that Whyte's representations did not amount to an "objective falsehood." Plaintiff counters that, based on the admittedly atrocious state of Armet's business, Whyte *should have known* that there was no way that Armet could have complied with the contract delivery dates. See 31 U.S.C. § 3729(b)(1) (2014). Plaintiff does a commendable job of setting forth facts to establish that, in mid- to late 2006, the conclusion that Armet was unable to comply with the deadlines was inescapable.[2]

---

[2] Conversations that occurred *after* the Government awarded Armet the contracts are irrelevant. The Government awarded Armet the 0028 contract on April 25, 2006 (Am. Compl. ¶ 225), and awarded Armet the 0047 contract on June 18, 2006 (id. ¶ 227). Plaintiff alleges that he told Whyte that he was relying on money from a single-vehicle contract to keep Armet afloat *on July 29, 2006.* (Id. ¶ 142.) "On August 2, 2006, Andrea Grandinetti emailed Relator stating that Largo[, Florida,] only had $66,953.54 in the bank, [and] that the company had to ask the bank to 'front money' in order to cut payroll checks." (Id. ¶ 143.) While these conversations would contribute to the conclusion that Whyte should have known that

- 4 -

Plaintiff alleges that, throughout 2005, Armet's Largo facility struggled to produce a small number of armored Ford Excursions. (Am. Compl. ¶ 134.) In March of 2006, "Relator learned that Armet's Canada facility had not sent [Largo] the glass [for some vehicles] because Armet was in arrears with the glass vendor." (Id. ¶ 137.) Around the same time, Largo "fell behind schedule because Armet's Canada facility did not ship steel due to [a] similar financial situation." (Id. ¶ 138.) At the same time, Relator informed Whyte that some vendors were refusing to supply them at all until they were paid in full, and that "[t]hat situation remains." (Id. ¶ 139.) Moreover, Plaintiff alleges that, "Whyte knew that Armet could not meet the delivery dates required by the 0028 and 0047 [c]ontracts because Armet did not have the resources or manpower to produce a total of 32 armored gun trucks in just over four months." (Compl. ¶ 228.) Additionally, when Plaintiff relayed his concerns to Whyte about Armet's ability to produce the vehicles on schedule, "Whyte dismissed [Plaintiff's] concerns, and replied 'This is just how the game is played.'" (Id. ¶ 223.)

Even if Whyte did not *know* that Armet could not produce the vehicles within 45 days (see id. ¶ 225), when he told the Government he could comply with its timetable, the facts alleged indicate he was acting in deliberate ignorance of the truth or falsity of his statements. See 31 U.S.C. § 3729(b)(1). I believe Plaintiff has adequately pleaded that Whyte's representations that Armet could produce the vehicles on the government's timetable represented an "objective falsehood." On these facts, I do not believe that Defendants can argue that, had all luck and fortune turned their way, they might have been able to meet the deadlines, and therefore Whyte's statements were not "objectively false." This type of "ostrich" defense—where one purposefully does not learn facts which prudence dictates one should have known—has been

---

Armet could not comply had they occurred prior to the awarding of the government contract, they are not relevant for this inquiry.

- 5 -

rejected before. See, e.g., U.S. ex rel. Ervin & Assocs., Inc. v. Hamilton Securities Group, Inc., 370 F. Supp. 2d 18, 42 (D.D.C. 2005) ("The standard of reckless disregard, however, was designed to address the refusal to learn information which an individual, in the exercise of prudent judgment, should have discovered."); Crane Helicopter Servs., Inc. v. United States, 45 Fed. Cl. 410, 433 (Fed. Cl. 1999) ("[T]he statute covers not just those who set out to defraud the government, but also those who ignore the obvious warning signs."); San Francisco Unified Sch. Dist. ex rel. Contreras v. First Student, Inc., 224 Cal. App. 4th 627, 646 (2014). For this reason, although it is a close call, Defendants' Motion to Dismiss Counts 5-8 will be denied as well.

Contrary to Plaintiff's assertions, Counts 9–10 and 13–22 represent, at most, an implied certification theory of liability under the FCA.[3] Under a false certification theory of liability under the FCA, a relator must show that: "'a government contract or program required compliance with certain conditions as a prerequisite to a government benefit, payment, or program; the defendant failed to comply with those conditions; and the defendant falsely certified that it had complied with the conditions in order to induce the government benefit.'" Glynn v. EDO Corp., 710 F.3d 209, 216 (4th Cir. 2013) (quoting Harrison, 176 F.3d at 786). Plaintiff asserts that the invoices themselves represented a claim that the vehicles complied with the contracts. Plaintiff has not alleged, however, what statement in the invoices was false. Likewise, he has not pointed to any contractual language in which the parties agreed that the submission of an invoice amounts to a certification that the vehicles were in compliance with the

---

[3] At oral argument, Plaintiff presented an entirely new theory of liability under Counts 9–10 and 13–22. Counsel argued that Armet billed the Government for Kestrel/Gurkha vehicles, but that it did not deliver those specific models. Counsel contended that the Kestrel/Gurkha models, as designed, would have met the Government's specifications, but because the vehicles Armet ultimately delivered did *not* meet the contract specifications, the invoices were false because they identified a model that was not actually delivered. This argument is unpersuasive because, although such an allegation would state a claim for an FCA violation, that is simply not what the Complaint alleges. (See, e.g., Am. Compl. ¶ 478 (alleging a "false claim for payment for delivery of non-compliant vehicles").)

- 6 -

contracts' specifications.  In the absence of this simple statement, Plaintiff is forced to rely on an implied theory of certification—a theory which is not valid in this Circuit.  See Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 786 & n.8 (4th Cir. 1999); see also United States ex rel. Herrera v. Danka Office Imaging Co., 91 Fed. App'x 862, 864 n.3 (4th Cir. 2004) (unpublished).

Alternatively, Counts 9–10 and 13–22 could be read as alleging that Armet breached its contract with the Government by failing to live up to its agreement to provide vehicles with the agreed-upon ballistic protections.  As I stated in my prior opinion, such a theory is not cognizable under the False Claims Act.  (See Mem. Op. pgs. 14–16, Aug. 26, 2014 [ECF No. 58].)

In his 99-page, 565-paragraph Complaint, Plaintiff was unable, on the second attempt, to marshal the allegations set forth above.  Despite his arguments that "one can reasonably infer from the . . . contractual language that compliance, with regard to the quality of each vehicle, was expected at the time of payment and delivery" (Pl.'s Mem. of Points & Authorities in Opp. to Defs.' Mot. to Dismiss pg. 43, Oct. 7, 2014 [ECF No. 69]), the factual allegations I set forth above are necessary to show "'the defendant falsely certified that it had complied with the conditions in order to induce the government benefit.'"  Glynn, 710 F.3d at 216 (quoting Harrison, 176 F.3d at 786).  Because Plaintiff is unable to make that allegation after two attempts and over 100 pages of total allegations, I am forced to conclude that the facts simply do not exist. As such, Counts 9–10 and 13–22 will be dismissed, and Plaintiff will not be granted leave to amend his Complaint a second time.[4]

## CONCLUSION

---

[4] Plaintiff stipulated at oral argument that Defendants' motion to dismiss Count 25 should be granted.

Plaintiff has adequately pleaded that Whyte's statements to the Government in order to induce them to award the 0028 and 0047 contracts to Armet were objectively false statements made with the requisite scienter. These allegations represent valid claims of fraudulent inducement under the FCA, and Defendant's motion to dismiss will be denied with respect to Counts 1–8.

Counts 9–10 and 13–22, however, will be dismissed. Plaintiff lacks the crucial allegation that the contract dictated that the submission of invoices constituted a certification that the goods met the contracts specifications. Alternatively, Plaintiff could have pleaded that the invoices contained a false statement regarding the quality or quantity of the goods. Because the Complaint lacks either allegation, Plaintiff has failed to state a claim for false certification under the FCA, and those counts will be dismissed.

The Clerk is directed to forward a copy of this Opinion and accompanying Order to all counsel of record.

Entered this 12th day of December, 2014.

s/Jackson L. Kiser
SENIOR UNITED STATES DISTRICT JUDGE