IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| FRANK SKINNER, | ) | |
| | ) | |
| Plaintiff/Relator, | ) | Case No. 4:12-cv-00045 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| ARMET ARMORED VEHICLES, INC., | ) | By: Hon. Jackson L. Kiser |
| and WILLIAM R. WHYTE, | ) | Senior United States District Judge |
| | ) | |
| Defendants. | ) | |

On December 19, 2014, Defendants Armet Armored Vehicles, Inc. ("Armet") and William R. Whyte ("Whyte") (collectively "Defendants") filed a motion seeking a stay of this action "pending the outcome of the criminal proceedings" against Whyte. (Defs.' Mot to Stay Civil Action, Dec. 19, 2014 [ECF No. 79].) On January 8, 2015, the Fourth Circuit Court of Appeals issued its opinion in United States ex rel. Badr v. Triple Canopy, Case Nos. 13-2190 &13-2191, wherein the Court of Appeals stated that the "implied certification" theory of liability under the False Claims Act is viable in this Circuit. In light of that decision, Plaintiff filed a Motion asking me to reconsider the dismissal of several counts of his Complaint because they premised liability under the FCA on Defendants' implied certification of compliance with the contractual provisions of Defendants' contract with the government. (See Pl.'s Mot. to Reconsider, Jan. 15, 2015 [ECF No. 85].) Both motions were briefed by the parties, and I heard oral arguments on both issues on February 2, 2015. For the reasons stated herein, I will deny Defendants' Motion to Stay and grant Defendants' Motion to Reconsider. Upon reconsideration of my prior ruling, Defendants' Motion to Dismiss [ECF No. 62] will be denied in its entirety. Every count of Plaintiff's First Amended Complaint is viable.

- 1 -

## I. STANDARD OF REVIEW

Motion for Stay

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the dispositions of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." Landis v. N. Am. Co., 299 U.S. 248, 254–55 (1936). "A motion to stay, though not expressly provided for by the Federal Rules of Civil Procedure, is a power inherent in the courts 'under their general equity powers and in the efficient management of their dockets.'" PBM Nutritionals, LLC v. Dornoch Ltd., 667 F. Supp. 2d 621, 631 (E.D. Va. 2009) (quoting Williford v. Armstrong World Indus., Inc., 715 F.2d 124, 127 (4th Cir. 1983). In using this authority, courts are given wide latitude to "'weigh competing interests and maintain an even balance.'" Williford, 715 F.2d at 127 (quoting Landis, 299 U.S. at 255). "Courts may consider factors relevant to the stay, including whether all necessary parties are present in each action, convenience, and judicial economy and comity." PBM, 667 F. Supp. 2d at 631 (citing Int'l Nickel Co. v. Martin J. Barry, Inc., 204 F.2d 583, 585–86 (4th Cir. 1953)).

"Ultimately, the party seeking a stay 'must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative.'" Id. (quoting Williford, 715 F.2d at 127). "This requires a 'clear case of hardship or inequity in being required to go forward.'" Id. (quoting Landis, 299 U.S. at 255). If inequity or hardship cannot be shown, then a stay is not warranted. See Aventis Pharma Deutschland GMBH v. Lupin Ltd., 403 F. Supp. 2d 484, 489 (E.D. Va. 2005)).

Motion to Reconsider

Pursuant to Federal Rule of Civil Procedure 54(b), "[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties[,] does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  "The Fourth Circuit has offered little guidance on the standard for evaluating a Fed. R. Civ. P. 54(b) motion, but has held motions under Rule 54(b) 'are not subject to the strict standards applicable to motions for reconsideration of a final judgment.'"  Joe Hand Promotions, Inc. v. Double Down Entm't, LLC, Case No. 0:11-cv-02438, 2012 WL 6210334, at *2 (D.S.C. Dec. 13, 2012) (quoting Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 514 (4th Cir. 2003)).  Such a distinction arises "because a district court retains the power to reconsider and modify its interlocutory judgments . . . at any time prior to final judgment when such is warranted."  Am. Canoe, 326 F.3d at 514–15.  "In this regard, district courts in the Fourth Circuit, in analyzing the merits of a Rule 54(b) motion, look to the standard for a motion under Fed. R. Civ. P. 59 for guidance.  Therefore, the following are appropriate reasons for granting a Rule 54(b) motion: (1) to follow an intervening change in controlling law; (2) on account of new evidence; or (3) to correct a clear error of law or prevent manifest injustice."  Joe Hand, 2012 WL 6210334, at *2 (citing Beyond Sys., Inc. v. Kraft Foods, Inc., Case No. PLM-08-409, 2010 WL 3059344, at *2 (D. Md. Aug. 4, 2010)).  "Furthermore, a motion for reconsideration is not an opportunity to rehash issues already ruled upon because a litigant is displeased with the result."  Id.

## II. FACTUAL BACKGROUND

The facts are adequately set forth in my opinion on Defendants' first Motion to Dismiss. (See Mem. Op. pgs. 2–6, Aug. 26, 2014 [ECF No. 58].)[1] They need not be repeated here.

## III. DEFENDANTS' MOTION FOR STAY

The gravamen of Defendants' Motion to Stay is their belief that Whyte, in responding to discovery or testifying in the civil case in either his individual or capacity as a corporate representative for Armet, see Fed. R. Civ. P. 30(b)(6), could inadvertently waive his Fifth Amendment protections in the criminal case.

While it is true that Whyte's statements during discovery or at trial could later be used by the government against Whyte in the criminal trial, see Fed. R. Evid. 801(d)(2), that fact does not mean that Whyte will inadvertently waive his Fifth Amendment protections entirely in a separate, subsequent proceedings. First, the "testimonial waiver" that Defendants fear only applies to testimony given "in the context of the same judicial proceeding . . . ." Klein v. Harris, 667 F.2d 274, 288 (2d Cir. 1981) (citing United States v. Housand, 550 F.2d 818, 821 n.3 (2d Cir. 1977), cert. denied, 431 U.S. 970 (1977)). The criminal case is not the same "judicial proceeding" as the civil case, and thus the "testimonial waiver" analysis has no bearing in this context. Moreover, even if Whyte does testify, he only waives his Fifth Amendment rights as to the statements he chooses to make. See Harrison v. United States, 392 U.S. 219, 222 (1968) ("A defendant who chooses to testify waives his privilege against compulsory self-incrimination ***with respect to the testimony he gives***, and that waiver is no less effective or complete because the defendant may have been motivated to take the witness stand in the first place only by reason of the strength of the lawful evidence against him." (emphasis added)). Testifying in part in the

---

[1] Skinner v. Armet Armored Vehicles, Inc., Case No. 4:12-cv-00045, 2014 WL 4243670, at *1–3, 2014 U.S. Dist. LEXIS 118784, at *2–9 (W.D. Va. Aug. 26, 2014).

civil proceeding does not mean that he cannot invoke his rights against self-incrimination in a separate, subsequent criminal proceeding.

The proper consideration is whether and to what extent Whyte's Fifth Amendment rights are implicated in the civil case, and whether *those* considerations warrant a stay. As the Supreme Court stated in 1973, the Fifth Amendment "not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." Lefkowitz v. Turley, 414 U.S. 70, 77 (1973). It is well-established that a litigant is free to exercise his right against self-incrimination at any stage of a civil proceeding to which he is a party or a witness. Accord N. River Ins. Co., Inc. v. Stefanou, 831 F.2d 484, 486 (4th Cir. 1987) (holding that a party may invoke the Fifth Amendment privilege during a civil proceeding, including the pleading stage). Contrary to Defendants' position, a stay of the civil case is not the only way to preserve Whyte's Fifth Amendment rights. The primary prophylactic is to invoke one's rights:

> [F]or one to invoke [the Fifth Amendment] privilege the party claiming it must not only affirmatively assert it, he must do so with sufficient particularity to allow an informed ruling on the claim. . . . The privilege . . . may be asserted and preserved in the course of discovery proceedings, but in specifics sufficient to provide the court with a record upon which to decide whether the privilege has been properly asserted as to each question.

Id. at 487 (citing United States v. Gordon, 634 Fed. Supp. 409, 418 (Ct. Int'l Trade 1986)).

Whyte is free to claim the protections of the Fifth Amendment at any time he and his able attorneys see fit.[2] In the context of a civil proceeding, however, Whyte is not free from an

---

[2] Whyte has three attorneys as his counsel of record, including one former assistant United States Attorney. His attorneys have not given the Court any reason to doubt that they are capable of competently advising him on when to assert his Fifth Amendment privilege.

- 5 -

adverse inference as a result of his silence.  See Baxter v. Parmigiano, 425 U.S. 308, 318 (1976).

As the Supreme Court stated:

> Thus, aside from the privilege against compelled self-incrimination, the Court has consistently recognized that in proper circumstances silence in the face of accusation is a relevant fact not barred from evidence by the Due Process Clause. Indeed, as Mr. Justice Brandeis declared, speaking for a unanimous court in the [United States ex rel. Bilokumsky v.] Tod case, which involved a deportation: "Silence is often evidence of the most persuasive character."

Id. at 319 (quoting U.S. ex rel. Bilokumsky v. Tod, 263 U.S. 149, 153–54 (1923)). Moreover, and as is most relevant here, "'That the defendant faces such a dilemma demanding a choice between complete silence and presenting a defense has never been thought an invasion of the privilege against self-incrimination.'" United States v. Rylander, 460 U.S. 752, 759 (1983) (quoting Williams v. Florida, 399 U.S. 78, 83–84 (1970)). Although Defendant faces a choice in deciding what questions to answer, that choice does not violate his rights or force him to waive his rights in separate, subsequent criminal proceedings.

Nevertheless, because Whyte will be forced into a situation where he may choose to exercise his Fifth Amendment rights,[3] his rights will be implicated, although not to the degree Defendants claim. Looking at the concerns from the appropriate standpoint, I can properly address Defendants' motion.

Courts have discretion in whether to grant a motion to stay. Landis v. N. Am. Co., 299 U.S. 248, 254 (1936). "The parties and issues do not need to be the same for the court to grant a stay in one case to accommodate another case." Avalonbay Communities, Inc. v. San Jose Water Conservation Corp., Case No. 07-306, 2007 WL 2481291, at *1 (E.D. Va. Aug. 27, 2007). "Federal courts have used the balancing test set in Landis that weighs the hardship to the moving

---

[3] This assumes that Whyte is unsuccessful in his appeal of the Canadian order of extradition, or that he abandons his opposition to extradition.

party against the prejudice to the opposing party." Id. Courts have considered myriad factors when deciding whether to grant a stay. In In re Mid-Atlantic Toyota Antitrust Litigation, the district court used a five-factor test that includes some of the additional factors that courts have considered in motions for stays:

> (1) Interest of plaintiff in proceeding expeditiously balanced against prejudice to plaintiff caused by delay, (2) burden on defendant, (3) convenience to the court, (4) interests of persons not party to the civil litigation, and (5) the public interest.

In re Mid-Atlantic Antitrust Lit., 92 F.R.D. 358, 359 (D. Md. 1981) (quoted in Avalonbay, 2007 WL 2481291, at *2). I believe these consideration of these factors will adequately address the relevant concerns.

Addressing the factors in turn, Plaintiff certainly has an interest in proceeding expeditiously, especially considering the initial delays caused by the government exercising its right to decide whether it wished to take over this *qui tam* action, Plaintiff's difficulty in locating Whyte's Canadian whereabouts (see, e.g., Pl.'s Mot. for Ext. of Time to Serve Def. with Summons, Nov. 11, 2013 [ECF No. 25]), and Whyte's efforts to avoid service of process in Canada (see, e.g., Pl.'s Second Mot. for Ext. of Time to Serve Def. with Summons, Jan. 31, 2014 [ECF No. 32]). Contrary to Defendants' position, they *are* seeking an indefinite stay. Although they request a 60- or 90-day delay, there is no reason to think that the criminal case will be concluded in that amount of time, or that any of the Fifth Amendment concerns they assert will have abated at the conclusion of a two- or three-month delay. Thus, despite what they contend in their pleadings, Defendants want this case stayed until the criminal case has concluded.[4] That process could take years (including trial, appeal, and collateral attacks). If Whyte is concerned

---

[4] Compare Defs.' Reply in Supp. of Mot. to Stay pg. 1, Jan. 9, 2015 [ECF No. 84] (arguing that a stay of this case "will not be indefinite"), with Defs.' Mot. for Stay, Dec. 19, 2014 [ECF No. 79] (requesting the Court "stay further proceedings . . . pending the outcome of the criminal proceedings"), and Random House College Dictionary 676 (Rev. ed. 1980) (defining "indefinite" as "without fixed limit").

- 7 -

about having to exercise his rights in this case, the delay Defendants claim to be seeking will do nothing to address that concern. The only stay that could conceivably address his concerns is an indefinite one. Such a delay imposes an undue burden on Plaintiff and is "an extreme measure which Landis strongly discourages." Ashworth v. Albers Med., Inc., 229 F.R.D. 527, 533 n.4 (S.D.W. Va. 2005). The prejudice to Plaintiff of an indefinite stay is virtually unbearable.

Second, the burden on Defendants is slight, despite their protestations to the contrary. Whyte is free to exercise his Fifth Amendment rights at any time he and his attorneys see fit. The fact that "an adverse inference can be drawn against litigants who assert their Fifth Amendment rights in a civil proceeding," Avalonbay, 2007 WL 2491291, at *2, does not justify staying this action.[5] If it did, there would be no need for the plethora of case law on the Fifth Amendment in the civil context; courts would simply stay every case in which a defendant's Fifth Amendment rights may be implicated. Whyte has not offered any justification why he should be excused from this general rule.

Third, the Court "has a policy of efficient and expeditious resolution of cases." Id. at *4. An indefinite stay in contrary to this policy.

Turning to the penultimate factor, besides the government, neither party has directed the Court to any third parties with an interest in this litigation. That factor weighs neither for nor against a stay.

Finally, the public has an interest in seeing a resolution of this action. Plaintiff has accused Defendants of defrauding the government of taxpayer money. The public interest is served only by investigating the merits of Plaintiff's claim and, if Defendants are found liable, recovering any ill-gotten gains. Likewise, the public interest would be served if the merits of the

---

[5] Defendants couch this argument as the choice between waiving his Fifth Amendment rights in the criminal case or passively defending the civil action. This is a false choice, as neither option is required.

- 8 -

case reveal that Defendants acted squarely within the law. The peace of mind that comes with knowing that one has not been defrauded can be just as valuable as recovering any defrauded funds.

Considering all the factors, a stay is not warranted. Whyte is free to exercise his Fifth Amendment rights in this case. Doing so places him at no greater disadvantage than every other litigant who wishes to protect his rights. If he chooses to testify, he has competent and able counsel to guide him. A stay of limited duration would not abate Defendants' concerns or alter these conclusions.

### IV. PLAINTIFF'S MOTION TO RECONSIDER

"A motion for reconsideration is not an opportunity to rehash issues already ruled upon because a litigant is displeased with the result." Joe Hand Promotions, Inc. v. Double Down Entm't, LLC, Case No. 0:11-cv-02438, 2012 WL 6210334, at *2 (D.S.C. Dec. 13, 2012). When considering a motion for reconsideration, "the following are appropriate reasons for granting a Rule 54(b) motion: (1) to follow an intervening change in controlling law; (2) on account of new evidence; or (3) to correct a clear error of law or prevent manifest injustice." Id. (citing Beyond Sys., Inc. v. Kraft Foods, Inc., Case No. PLM-08-409, 2010 WL 3059344, at *2 (D. Md. Aug. 4, 2010)).

In United States ex rel. Badr v. Triple Canopy, Inc., the Fourth Circuit clearly stated that implied certification theories of liability under the False Claims Act are valid in this Circuit.[6]

---

[6] This does not represent as pure reversal of standing precedent. Prior to Triple Canopy, the Fourth Circuit merely expressed its doubt that the "implied certification" theory of liability under the FCA was valid in the Circuit. See Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 786 n.8 (4th Cir. 1999) ("Our decision in [United States ex rel.] Berge [v. Board of Trustees of the University of Alabama] . . . makes questionable an implied certification claim in the Fourth Circuit. We need not address the validity and problems of an implied certification theory of liability here."); see also United States ex rel. Herrera v. Danka Office Imaging Co., 91 Fed. App'x 862, 864 n.3 (4th Cir. 2004) (unpublished) ("We have previously noted that claims of implied certification were 'questionable' in this circuit. Given our

- 9 -

The Fourth Circuit held "that the Government pleads a false claim when it alleges that the contractor, with the requisite scienter, made a request for payment under a contract and 'withheld information about its noncompliance with material contractual requirements.'" United States ex rel. Badr v. Triple Canopy, Inc., Case Nos. 13-2190, 13-2191, 2015 WL 105374, at *5 (4th Cir. Jan. 8, 2015) (quoting United States v. Sci. Applications Int'l Corp., 626 F.3d 1257, 1266 (D.C. Cir. 2010)). The court further clarified that "[t]he 'pertinent inquiry' is 'whether, through the act of submitting a claim, a payee knowingly and falsely implied that it was entitled to payment.'" Id. (quoting United States ex rel. Lemmon v. Envirocare of Utah, Inc., 614 F.3d 1163, 1169 (10th Cir. 2010)).

Re-examining Plaintiff's Amended Complaint in light of the Triple Canopy decision, Counts 9–10 and 13–22 make out a claim under the False Claims Act by setting forth facts sufficient to state an "implied certification" theory of liability—a theory which the Fourth Circuit has now affirmed is valid. Following the language in Triple Canopy, Plaintiff alleged that Whyte and Armet—the contractors—made a request for payment and knowingly "withheld information about its noncompliance with material contractual provisions." Id. Plaintiff alleged that Whyte and Armet knew that the vehicles for which it was billing the government did not meet the ballistic protection requirements of its contracts with the government. Nevertheless, Defendants billed and collected for vehicles it knew did not meet the contract specifications. Under the guidance of Triple Canopy, the allegations make out a claim for an "implied certification" claim under the FCA.

Defendants argue that Triple Canopy should be limited to its facts, and should not be expanded any further. Nothing in the Fourth Circuit's opinion indicates that the Court of

---

resolution of this issue we need not decide whether claims for implied certification are viable under the False Claims Act." (citing Harrison, 176 F.3d at 786 n.8)).

Appeals intended a holding limited to the discrete facts presented therein. In fact, the language employed by the Court was inclusive; they set forth the elements of an implied certification claim generally. See id. I see no basis to conclude that the Court did not intend for its holding to reach facts like those presented here.

Defendants alternatively argue that the facts[7] presented by Plaintiff present a much different scenario than the facts of Triple Canopy or the gasoline/octane hypothetical cited in the Fourth Circuit's opinion. See id. (quoting United States v. Sci. Applications Int'l Corp., 626 F.3d 1257, 1269 (D.C. Cir. 2010)). They point to the fact that Defendants' contract with the government stipulated that a government representative was required to certify compliance with the contracts prior to the government's acceptance of the vehicles. This fact, however, does not lessen the falsity of Defendants' alleged representations to the government. If true, this fact goes only to the materiality of the contractual provisions at issue. If the government inspected the vehicles and knew that they did not meet the contract specifications, Defendants are free to argue that those specifications were immaterial. That does not change, for pleading purposes, the fact that Plaintiff has alleged that Defendants' implications to the government in submitting its invoices were demonstrably false. For this reason, it does not negate the fact that, under Triple Canopy, Plaintiff has stated a claim for a violation of the False Claims Act.

Because there has been a "change in the law," it is appropriate to grant the Motion for Reconsideration and, on reconsideration, deny Defendants' Motion to Dismiss in its entirety. As stated in the original opinion, the only counts I dismissed were those I held stated an "implied

---

[7] This argument is without merit because, on reconsideration, I am considering a Motion to Dismiss pursuant to Rule 12(b)(6). Defendants argument is that, on the facts of the case, Plaintiff will not prevail. That is not a valid reason to grant a Rule 12(b)(6). I assume that all factual assertions in the Complaint are true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). If the facts are different from those alleged, that is the province of the Court under Rule 56 or a fact finder at trial.

certification" claim. Because the Fourth Circuit has held that that theory is now viable, the Motion to Dismiss will be denied.

V.      **CONCLUSION**

Because Whyte is free to exercise his Fourth Amendment rights as he sees fit, and because doing so does not waive his rights in the criminal proceeding, a stay is not warranted in this case. The Motion for Stay will be denied.

The Fourth Circuit's recent ruling in <u>United States ex rel. Badr v. Triple Canopy, Inc.</u> represents a change in the law applicable to this case. The Motion for Reconsideration will be granted. Upon reconsideration, Defendants' Motion to Dismiss the Amended Complaint will be denied in its entirety because Counts 9–10 and 13–22 represent valid, "implied certification" theories of liability under the False Claims Act.

The Clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to all counsel of record.

Entered this 10th day of February, 2015.

s/Jackson L. Kiser
SENIOR UNITED STATES DISTRICT JUDGE
